IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>EUGENE HILL,<br><br>    Defendant.<br>_____/ | No. CR 13-00765 SI<br><br>**ORDER DENYING MOTION TO SUPPRESS** |

On February 7, 2014, the Court heard oral argument on the defendant's motion to suppress. Having considered the arguments of counsel and the papers submitted, the Court DENIES the defendant's motion.

**BACKGROUND**

On November 21, 2013, the grand jury returned a three count indictment with forfeiture allegations against defendant Eugene Hill and one codefendant.[1] The indictment charges the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); obstruction of justice, in violation of 18 U.S.C. § 1512(a)(2)(A); and also contains firearm-related forfeiture allegations. The events underlying the indictment allegedly took place in September, 2013.

---

[1] This motion does not concern codefendant Tyrell Myers, and therefore the Court will only discuss the indictment as it relates to defendant Hill.

1    On September 14, 2013, at approximately 12:30 a.m., Greg Vanscoyk was awakened by the
2 sound of his dogs barking. Declaration of Deputy Monique Lomas ("Lomas Decl.") at 2. Mr. Vanscoyk
3 looked out of several windows, but did not see anything unusual. *Id.* When the dogs stopped barking,
4 Mr. Vanscoyk went back to sleep. *Id.* At approximately 6 a.m., Mr. Vanscoyk was preparing to leave
5 for work and he checked the back bed of his pickup truck to ensure that his tool bag was still there. *Id.*
6 In the bed of the truck, sitting atop a pile of asphalt in the driver's side corner, Mr. Vanscoyk saw a
7 black backpack. *Id.* He did not recognize the backpack, and did not know why anyone would have put
8 it in his truck. *Id.* Mr. Vanscoyk removed the backpack from his truck, placed it on his porch, and went
9 to work. *Id.*

10   At approximately 11:30 a.m., Mr. Vanscoyk returned from work and saw that the backpack was
11 still sitting on his porch. He took the backpack into his home, and unzipped the main compartment to
12 look for anything that might identify the owner. *Id.* He moved some paperwork aside and saw what
13 he thought was the butt of a gun at the bottom of the backpack. *Id.* Mr. Vanscoyk immediately zipped
14 up the backpack and called the police. *Id.*

15   When Deputy Lomas arrived at the home, Mr. Vanscoyk handed her the backpack. *Id.* Deputy
16 Lomas looked in the main compartment of the backpack and saw what appeared to be the butt of a gun.
17 *Id.* She pulled the gun from the backpack and noticed that it had a red tip, indicating that it was not a
18 true firearm, but a pellet gun. *Id.* Nevertheless, Deputy Lomas intended to book the backpack into the
19 Sonoma County Sheriff's Office property room for safekeeping, because she believed the backpack had
20 been abandoned. *Id.* It is the Sonoma County Sheriff's Office's policy to conduct an inventory search
21 of all personal property items that are booked into its property room. *Id.* Therefore, Deputy Lomas
22 continued to search the backpack. *Id.*

23   The next item Deputy Lomas found was a piece of mail addressed to the defendant. *Id.* at 3.
24 Deputy Lomas was familiar with the defendant from her experiences as a correctional officer and as a
25 Sonoma County patrol deputy. *Id.* Specifically, on several occasions she had witnessed the defendant
26 being booked into custody for violating his parole. *Id.* Additionally, as a patrol officer, she had once
27 stopped the defendant and found drugs and associated paraphernalia on his person. *Id.* Based on her
28

knowledge of the defendant, Deputy Lomas believed there might be weapons or drugs in the backpack. *Id.*

Deputy Lomas continued searching the backpack. *Id.* She found a metal container holding pellets, and a plastic bottle with BBs in it, also in the main compartment of the backpack. *Id.* In the small front pocket of the backpack, Deputy Lomas found a jail identification card bearing the defendant's name and photograph. *Id.* She also found other paperwork bearing the defendant's name. *Id.* Also in the backpack's small front pocket, Deputy Lomas found a handgun magazine loaded with three .32 caliber bullets. *Id.*; Declaration of Daniel P. Blank in Support of Omnibus Motion to Suppress ("Blank Decl."), attach. A. Deputy Lomas photographed the backpack, the pellet gun, and the magazine and ammunition. Blank Decl., attach. A. All items were booked into the Sheriff's Office. *Id.*

Deputy Lomas asked Mr. Vanscoyk if he knew the defendant. *Id.* Mr. Vanscoyk responded that he did not. *Id.* Deputy Lomas asked him why anyone might store a backpack in his truck. *Id.* Mr. Vanscoyk responded that his wife's grandson, Michael, and Michael's mother, Margaret, both had criminal records, and he hypothesized that Michael might have something to do with the backpack. *Id.* Mr. Vanscoyk was aware from his wife that Michael had recently been spending time with the defendant. *Id.*

Deputy Lomas issued an arrest order for the defendant, pursuant to California Penal Code section 836, for being a felon in possession of a firearm. *Id.* Deputy Lomas, along with three other deputies, went to the defendant's known addresses, but was unable to locate him. *Id.*

On September 16, 2013, Deputy Jucutan was on patrol in Santa Rosa. Blank Decl., attach. B. Deputy Jucutan saw a man, later identified as the defendant, walking with a group of people. *Id.* When Deputy Jucutan drove toward the group, the defendant abruptly changed direction and began quickly walking away. *Id.* Deputy Jucutan asked a woman in the group who the man was. *Id.* She responded that she knew him as "Pops." *Id.* Deputy Jucutan was aware that the defendant was sometimes known as Pops. *Id.*

Deputy Jucutan drove back toward the defendant and exited his patrol vehicle. *Id.* He shined his flashlight on the defendant's face, and noticed a tattoo that he recognized from viewing a booking photo of the defendant. *Id.* Deputy Jucutan asked his name, and the defendant identified himself. *Id.*

1 Deputy Jucutan then placed the defendant in custody. *Id.* Pursuant to this arrest, Deputy Jucutan
2 searched the defendant and found a cellular telephone, a red bandana, and a useable amount of
3 marijuana. *Id.* Deputy Jucutan transported the defendant to a Sonoma County detention center and
4 booked him. *Id.* During the booking process, the defendant confirmed that he was still an active
5 member of the KUMI 415 criminal street gang. *Id.*

6 Also on September 16, 2013, Detective Cutting sought out Mr. Vanscoyk's wife's grandson,
7 Michael. Blank Decl., attach. D. Upon visiting Michael's listed address, Detective Cutting instead
8 encountered Michael's mother, Margaret. *Id.* Margaret told Detective Cutting that the defendant was
9 looking for Michael and Michael was "running for his life." *Id.*

10 Later the same day, Detective Cutting spoke to Michael on the telephone. Declaration of
11 Detective Brandon Cutting ("Cutting Decl.") at 3. Michael told Detective Cutting that the defendant
12 was threatening him because the defendant's backpack had ended up in law enforcement custody. *Id.*
13 Michael told Detective Cutting that the defendant had pointed a pistol at him and "was going to shoot
14 and kill [him]." *Id.* Michael said that he was able to escape, but he was left with the defendant's
15 backpack. *Id.* Michael then left the backpack in Mr. Vanscoyk's truck. *Id.*

16 On September 17, 2013, Detective Cutting sought and obtained a warrant from a Sonoma County
17 judge to search the defendant's cell phone. Blank Decl. at 3; *id.*, attach. C. A search of the cell phone
18 revealed at least one photograph of someone holding a gun.[2] Blank Decl. at 4.

19 The defendant now moves to suppress all evidence seized during the searches of his backpack,
20 his person, and his cell phone, all on Fourth Amendment grounds.

21

22 **LEGAL STANDARD**

23 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses,
24 papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. When

---

[2] In its opposition, the government asserts that there were multiple photographs of the defendant holding weapons, as well as photographs of weapons alone. Government's Opposition to the Defendant's Motion to Suppress ("Gov.'s Opp'n") at 5. The government also asserts that the cell phone contained a video referencing the backpack. *Id.* However, because these assertions are not substantiated by a declaration, for purposes of this motion the Court will credit defense counsel's declaration that characterizes the evidence as described above. *See* Crim. L.R. 47-2; Civil L.R. 7-5.

4

a search is conducted without a warrant, the analysis begins "with the basic rule that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). For example, it is reasonable for law enforcement to search abandoned property. *United States v. Kendall*, 655 F.2d 199, 202 (9th Cir. 1981), *cert. denied*, 454 U.S. 970 (1981). Inventory searches, *Colorado v. Bertine*, 479 U.S. 367, 371 (1987), and searches incident to lawful custodial arrests, *United States v. Robinson*, 414 U.S. 218, 235 (1973), are also well-defined exceptions to the Fourth Amendment's warrant requirement.

Under the Fourth Amendment, a search warrant may not issue without probable cause. U.S. Const. amend. IV. Probable cause exists where the issuing judge can determine that there is a "fair probability" that the evidence sought will be found in the place searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."). In determining whether a search warrant was based upon probable cause, the district court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985).

Review of a magistrate judge's determination that a warrant was supported by probable cause is deferential; "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39; *see also United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) ("Normally, we do not 'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." (internal quotation marks omitted)).

//
//
//

**DISCUSSION**

The defendant moves to suppress all evidence seized during the searches of his backpack, his person, and his cell phone. Specifically, he contends that: (1) the warrantless search of his backpack was invalid because it did not comport with any of the recognized exceptions to the warrant requirement; (2) the search of his person pursuant to his arrest was invalid because law enforcement lacked probable cause for the arrest itself; (3) the search of his cell phone was invalid because law enforcement lacked probable cause for a warrant to issue; and (4) the search warrant for his cell phone was invalid because the affidavit contained material false statements and omissions. For the following reasons, the Court disagrees and therefore DENIES the defendant's motion to suppress.

**1.    The Search of the Backpack.**

The defendant contends that all evidence seized pursuant to the warrantless search of his backpack should be suppressed because no exceptions to the Fourth Amendment's warrant requirement apply to this search. In its opposition, the government argues that the search was justified by four separate exceptions to the warrant requirement: (1) the law enforcement search did not exceed the scope of Mr. Vanscoyk's private search; (2) it was a valid inventory search; (3) the backpack had been abandoned; and (4) exigent circumstances necessitated the warrantless search. Because the Court concludes that the search of the backpack was a valid inventory search, it need not reach the government's additional asserted justifications.

The purposes of a lawful inventory search are threefold: they "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372. Courts accord substantial deference to the procedures law enforcement implements with regard to such administrative searches. *Id.* Where reasonable law enforcement procedures are administered in good faith, the Fourth Amendment is not violated. *Id.* at 374.

Deputy Lomas's search of the defendant's backpack was a valid inventory search and it therefore did not violate the defendant's Fourth Amendment rights. Deputy Lomas initially encountered the backpack pursuant to a call for help from a private citizen. Lomas Decl. at 1-2. The private citizen, Mr.

6

1 Vanscoyk, believed that he had found a gun inside the backpack. *Id.* at 2. When she first arrived at Mr. Vanscoyk's home, Deputy Lomas opened the same compartment he had opened, and located the item Mr. Vanscoyk reported seeing. *Id.* Deputy Lomas recognized that the item was not a true firearm, but was instead a pellet gun. *Id.* At that point she planned to book the backpack and its contents into the Sonoma County Sheriff's Office property room for safekeeping. *Id.* However, she first decided to conduct an inventory search of the backpack in accordance with the Sheriff's Office's policies and practices. *Id.*

As Deputy Lomas proceeded with her inventory search, the first item she located was a piece of mail bearing the defendant's name. *Id.* Deputy Lomas knew the defendant and was aware of his particular criminal history. *Id.* at 3. Based on her knowledge, she became concerned that the backpack might contain weapons or drugs. *Id.* It therefore became particularly important for her to conduct a thorough inventory search to comply with the Sheriff's Office's policies regarding weapons and contraband. *Id.* Ex. A. Deputy Lomas completed her inventory search of the backpack, locating multiple documents bearing the defendant's name and identifying information, as well as a firearm magazine containing three bullets. *Id.*

The defendant argues that the government has failed to establish that Deputy Lomas was acting pursuant to established Sheriff's Office policies for the storage of found items, and therefore her search cannot be a valid inventory search. *See* Reply on Omnibus Motion to Suppress ("Reply") at 7-8. However, Deputy Lomas attached to her declaration a copy of the Sonoma County Sheriff's Department Evidence/Property Packaging Manual. Lomas Decl. Ex. A. This manual purports to "establish procedures for the proper handling, packaging and booking of items seized or collected as evidence, safekeeping, or found property." *Id.* It goes on to detail the proper handling of biohazardous materials, ammunition, bulky items, sharp items, and syringes. *Id.* It instructs that all items booked into the Property Room must comply with this manual. *Id.* It is Deputy Lomas's sworn statement that, as soon as she identified the item Mr. Vanscoyk had described as a pellet gun, she intended to book the backpack into the Property Room. Lomas Decl. at 2. Thus, to comply with the procedures outlined in the manual, it was necessary for Deputy Lomas to search through the backpack and identify any items that might require special handling under the terms of the manual. Had Deputy Lomas simply stopped

7

1 at that point and taken the unsearched backpack into the Property Room, she would have violated the
2 Sheriff's Office's explicit policy regarding the proper handling and storage of ammunition because she
3 would not have known the backpack contained such an item.

4 The defendant further argues that, even if the actual search of the backpack was in accordance
5 with established policies, the search is nonetheless invalid because the Sheriff's Office does not have
6 a clear policy regarding the circumstances under which an officer may decide to book found property
7 into the Property Room. Under the circumstances of this case, it is difficult to imagine what choice
8 Deputy Lomas had other than to book the backpack into the Property Room. Deputy Lomas had been
9 contacted by a private citizen who believed someone had left a weapon on his property. Mr. Vanscoyk
10 did not claim the backpack, and did not want it to remain at his home. It would have been irresponsible
11 of Deputy Lomas, and a derogation of her duty as a law enforcement officer, to leave the backpack with
12 Mr. Vanscoyk. The Court therefore finds that Deputy Lomas acted in good faith accordance with
13 established procedures when she conducted an inventory search of the backpack.

14 Accordingly, the Court DENIES the defendant's motion to suppress the evidence seized during
15 the search of his backpack.

16

17 **2.   Probable Cause to Arrest.**

18 The defendant next argues that all evidence seized during the search of his person pursuant to
19 his arrest should be suppressed because law enforcement lacked probable cause to arrest him.

20 The Fourth Amendment permits a warrantless arrest in a public place, provided there is probable
21 cause to arrest the individual. *United States v. Bernard*, 623 F.2d 551, 558-59 (9th Cir. 1979).
22 "Whether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest
23 was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had
24 reasonably trustworthy information were sufficient to warrant a prudent man in believing that the
25 [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In
26 determining probable cause, law enforcement officers are expected to behave as "prudent men, not legal
27 technicians . . . ." *Gasho v. United States*, 39 F.2d 1420, 1428 (9th Cir. 1994) (quoting *Brinegar v.*
28 *United States*, 338 U.S. 160, 176 (1949)). "Probable cause exists when, under the totality of

8

circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that a crime was committed." *Id.* (citation and internal quotation marks omitted).

The defendant's arrest here was supported by probable cause. Following her search of the backpack, Deputy Lomas issued an arrest order for the defendant, pursuant to California Penal Code section 836. Blank Decl., attach. A. This section permits law enforcement to arrest an individual, with or without a warrant, provided "[t]he officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." Cal. Penal Code § 836(a)(3). As discussed above, in her search of the backpack, Deputy Lomas discovered multiple documents bearing the defendant's name and identifying information, as well as a loaded firearm magazine. Lomas Decl. at 2-3. Deputy Lomas was aware that the defendant was a convicted felon and therefore was not permitted to possess firearms or ammunition. *Id.*; *see also* Blank Decl., attach. A. This confluence of circumstances was sufficient to establish probable cause to arrest the defendant.

The defendant argues that, even if this information was sufficient to create a suspicion of wrongdoing on his part, that suspicion did not rise to the level of probable cause. Def.'s Mot. at 14-15. Specifically, the defendant contends that it was illogical for law enforcement to assume that the backpack and its contents belonged to the defendant, simply because the backpack contained documents bearing his name. *Id.*

The Court finds that, following Deputy Lomas's search of the backpack, law enforcement had probable cause to arrest the defendant. In determining whether probable cause exists, law enforcement need not rule out innocent explanations for the evidence. *United States v. Thomas*, 863 F.2d 622, 627 (9th Cir. 1988) ("The test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior.") (citation omitted). While it is possible that the backpack could have belonged to someone other than the defendant – for example, Michael, notwithstanding that none of the documents in the backpack bore Michael's name – or that some unidentified person could have placed the defendant's documents, identifying information, and other property into the backpack without his knowledge, law enforcement was not required to eliminate these possibilities. Instead, it was sufficient that the officers concluded that, based on the totality of the circumstances, there was a fair probability that the defendant had

committed the crime of being a felon in possession of a firearm or ammunition. *See Gasho*, 39 F.2d at 1428.

Accordingly, the Court finds that there was probable cause to arrest the defendant, and therefore DENIES the defendant's motion to suppress the evidence seized during the search of his person, pursuant to his lawful arrest.

### 3. The Search of the Defendant's Cell Phone.

The defendant makes two arguments regarding the validity of the warrant-based search of his cell phone, seized during the search incident to his arrest: (1) the warrant was facially invalid because the information available to the affiant did not establish probable cause that evidence the defendant had possessed a firearm would be found on his cell phone; and (2) the search warrant was defective because the application in support contained material false statements and omissions. For the reasons that follow, the Court rejects both arguments.

#### A. Probable Cause for the Search Warrant.

The defendant argues that, at the time Detective Cutting sought the warrant to search his cell phone, Detective Cutting lacked probable cause to believe that evidence of firearms possession would be found on that device. Def.'s Mot. at 17-18. The Court disagrees.

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (citation and internal quotation marks omitted). Courts must evaluate warrant affidavits in a common sense, not a "hypertechnical" manner, consistent with the Fourth Amendment's strong preference for search warrants. *Id.* A court should not invalidate a search warrant if it can conclude that the issuing judge had a "substantial basis" for determining that evidence of a crime would be found in the location to be searched. *Id.* "[I]n borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it." *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) (citation and internal quotation marks omitted).

The challenged warrant affidavit demonstrates ample probable cause. Detective Cutting provided a detailed affidavit in support of his September 17, 2013 application for a search warrant.

10

1  *See* Blank Decl., attach. C. He explained the circumstances of the search Deputy Lomas performed on
2  the backpack, and listed the items she found. *Id.* He described the interview he conducted with
3  Margaret, Michael's mother, and indicated that he was endeavoring to find Michael himself. *Id.*
4  Detective Cutting stated that the defendant had been arrested, and that a cell phone had been seized
5  during a search incident to that arrest. *Id.* Detective Cutting further stated that, based on his training
6  and experience, he had "learned that subjects who possess firearms will often take photographs of
7  themselves with weapons or simply the weapons themselves." *Id.* He also noted that "subjects often
8  discuss with associates about their having a firearm via text messaging." *Id.* Given that the underlying
9  charge against the defendant concerned the possession of ammunition, Detective Cutting believed that
10 it was probable that evidence of that crime would be found on the defendant's cell phone. *Id.* The
11 attested facts, taken together, support the issuing judge's determination that there was a fair probability
12 that evidence the defendant possessed firearms or ammunition would be found on the defendant's cell
13 phone.

14 The Court concludes that Detective Cutting's affidavit provided the issuing judge with a
15 "substantial basis" for determining that probable cause existed. *See Gates*, 462 U.S. at 236.
16 Accordingly, the Court DENIES the defendant's motion to suppress on the basis that the search warrant
17 lacked probable cause.

### B. Material False Statements and Omissions.

20 Finally, the defendant argues that, even if there was probable cause for the search warrant to
21 issue, the fruits of the search should still be suppressed because the warrant affidavit contained material
22 false statements and omissions. Def.'s Mot. at 18. Specifically, the defendant contends that, in his
23 affidavit, Detective Cutting attributed statements to Margaret, Michael's mother, that she never made.
24 *Id.* at 19-20. The defendant bases this argument on the fact that the statements the affidavit attributes
25 to Margaret were not recorded in Detective Cutting's police report related to his September 16, 2013
26 interview with Margaret. The defendant further argues that the affidavit contained a material omission
27 because it failed to inform the issuing judge that Margaret had a criminal history. *Id.* at 20. The

11

defendant seeks an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to further elucidate the alleged misstatements and omissions.

A defendant is entitled to an evidentiary hearing regarding the validity of a search warrant only if he makes a preliminary showing that: (1) the affiant intentionally or recklessly included a false statement in the warrant application; and (2) the false statement was material to the issuing judge's determination of probable cause. *Franks*, 438 U.S. at 155-56. Material omissions can likewise form the basis of a *Franks* hearing. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). The defendant bears the burden of proof, and must make a "substantial showing" as to both the required mental state of the affiant, and the materiality of the alleged misstatements or omissions. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).

With respect to the alleged misstatements, the defendant has failed to make a substantial showing regarding either required element. The defendant argues that the police reports do not reflect: (1) that the defendant knew the backpack was in the custody of law enforcement; and (2) that Margaret herself felt unsafe. Def.'s Mot. at 20. However, the defendant has failed to show that these were misstatements, much less material misstatements. In the declaration Detective Cutting submitted in support of the government's opposition, he stated that, while he documented the basic substance of Margaret's statements in his police report, he "did not record her statements verbatim." Cutting Decl. at 2. Thus, the defendant cannot demonstrate that the statements Detective Cutting attributed to Margaret in his warrant application were misstatements at all. Additionally, even if the defendant could prove the statements were false, the defendant has failed to demonstrate that, if excised, the issuing judge would not have found probable cause for the warrant to issue. Indeed, the alleged misstatements have no bearing on whether there was a fair probability that evidence of firearms possession would be found on the defendant's cell phone. Accordingly, the Court finds that the defendant is not entitled to a *Franks* hearing on the basis of the alleged misstatements.

With respect to the alleged omissions, the defendant has failed to show that, if information regarding Margaret's criminal history had been included, it would have impacted the issuing judge's finding of probable cause. *See Chavez-Miranda*, 306 F.3d at 979. The omission of an informant's criminal history may be material if that criminal history implicates the informant's credibility. *See*

12

*United States v. Reeves*, 210 F.3d 1041, 1045 (9th Cir. 2000). However, the defendant's arguments regarding Margaret's alleged criminal history fail for two reasons. First, Margaret was not truly an informant; she was instead a witness whose contribution to the investigation was tangential at best. Second, Margaret's alleged criminal history does not involve any crimes bearing on her credibility. *See* Cutting Decl. at 2-3. At the time he sought the search warrant, Detective Cutting believed that, while Margaret had incurred more than one misdemeanor arrest, she had never been convicted of a crime. *Id.* at 3. He later learned that Margaret had, in fact, incurred a misdemeanor conviction in 2006 for driving without a license. *Id.* In his declaration, however, Detective Cutting stated that, even if he had been aware of this conviction at the time he sought the warrant, he would not have included the information in the warrant application because the conviction did not bear on Margaret's credibility as a witness. *Id.* Accordingly, the Court finds that the defendant has failed to demonstrate that any alleged omission was made intentionally or recklessly, or that it was material in any way, and he is therefore not entitled to a *Franks* hearing on this basis.

Therefore, the Court DENIES the defendant's motion to suppress evidence seized during the search of the defendant's cell phone.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby DENIES the defendant's motion to suppress. This Order resolves Docket No. 14.

**IT IS SO ORDERED.**

Dated: February 10, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE